Peter Chu (SBN 251705)
pchu@taulersmith.com
Jaimee Hocker (SBN 363667)
jhocker@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Ryan Davidson*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN DAVIDSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STUDIO MCGEE DESIGN LLC, a Utah limited liability company; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) VIOLATIONS OF THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT (CALIFORNIA PENAL CODE § 502(e))**<br><br>**(2) FRAUD** |

## INTRODUCTION

1. When consumers visit Defendant Studio McGee Design LLC's ("Defendant") website at https://www.mcgeeandco.com/, Defendant displays a consent banner that provides every visitor, including Plaintiff, a choice as to whether they agree to be tracked by "cookies and similar technologies" such as Meta. However, even if a visitor elects not to be tracked, and in spite of its representations in the consent banner, Defendant allows both tracking technologies to be installed on visitor's computer, including data mining scripts from registered data brokers, (the "Data Broker Software"). The Data Broker Software is comprised of advanced technology that accesses the computer of the website visitor to obtain information about the computer (and thus, the computer user). The Data Broker Software also adds small data files to computers visiting the Website so that Defendant can monitor visitor's browsing habits.

2. Plaintiff did not consent to having their computer accessed and used in this manner. In fact, Plaintiff did the opposite and opted out of tracking by any means. Even though Defendant affirmatively represents that users could browse the Website without being tracked, followed, or targeted by third-party data broker (let alone by having their computer accessed and used for the purpose of commercial surveillance), those representations are false. Due to the nature of Defendant's misrepresentation, consent cannot be provided as a matter of law.

3. Plaintiff brings this action for violations of the CDAFA and common law fraud to obtain compensation for Defendant's misconduct, to enjoin Defendant's fraudulent representations and practices, and for disgorgement of data unlawfully obtained, among other remedies detailed herein.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United

States and at least one defendant is the citizen of a different State or subject of a foreign state.

5. Defendant is subject to personal jurisdiction in this state under CDAFA, which expressly provides for jurisdiction when a computer is unlawfully accessed in California.  In particular, Cal. Penal Code § 502(j) provides:  For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction.

6. The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and services provided to persons in the State of California. As such, Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

7. This Court also has personal jurisdiction over Defendant under California's "long-arm" statute found at California Code of Civil Procedure Section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."  Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of revenues from its website based upon interactions with Californians (including instances in which the website operates as a "gateway" to sales), such that the website "is the equivalent of a physical store in California."  Since this case involves unlawful conduct emanating from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

8. Finally, venue is proper in this County because: (1) Defendant is subject to

personal jurisdiction in this District because it has availed itself of the laws and markets within this District and pursuant to Cal. Penal Code § 502(j), as stated above; (2) a substantial part of the events or omissions, as alleged herein, giving rise to Plaintiff's claim; and (3) a substantial events or occurrence giving rise to Plaintiff's claim occurred within the judicial district where this Court sits. Further, in accordance with California Code of Civil Procedure Section 394(b), because "none of the defendants reside in the state," Avenue is proper "in any county that the plaintiff may designate in his or her complaint."

**PARTIES**

9.      Plaintiff  is a resident of California who accessed Defendant's website in California when their computer was accessed and used.

10.      Defendant is a Utah limited liability company that offers full-service interior design for new builds and large-scale renovations, virtual interior design services for specific spaces, and operate an exclusive e-commerce home furnishings brand.   It operates its website throughout the United States and in this County.

11.      The true names and capacities of defendants DOES 1 through 10, inclusive, are unknown to Plaintiff. Plaintiff is informed and believes, and thereon alleges, that each of the defendant designated as DOE is legally responsible in some manner for the unlawful conduct herein alleged. Plaintiff is further informed and believes, and thereon alleges, that Defendant directed and controlled DOES 1 though 10 to participate in implementing or maintaining Defendant's surveillance system. Plaintiff will seek leave to amend this Complaint to identify these entities when Defendant's discovery responses reveal their true names and roles.

12.      Plaintiff is further informed and believes, and thereon alleges, that DOES 1 thought 10, inclusive,  acted as Defendant's agent, employees, subsidiary, or affiliates. Each DOE Defendant operated within the scope of its relationship with Defendant and participated with Defendant in the common plan for the unlawful conduct alleged in this Complaint.

COMPLAINT

**FACTUAL ALLEGATIONS**

13. Plaintiff visited the Website on May 3, 2026. Plaintiff was physically present in California at the time. At the time of his visit, Plaintiff was presented with a consent banner that misleadingly made him believe that he has the ability to accept or reject the use of tracking software. Plaintiff rejected the use of tracking technologies. However, Defendant nonetheless caused Data Broker Software from Meta, LinkedIn, TikTok, and other data brokers, to access Plaintiff's device, allowing the Data Brokers to install a data mining script on Plaintiff's computer, and allowing Data Brokers to install files to be placed on Plaintiff's browser for enhanced long-term surveillance of Plaintiff's internet behavior.

14. Defendant fraudulently and deceptively informed Plaintiff that he could opt out of tracking, therefore surreptitiously allowing the Data Broker Software on Plaintiff's computer without consent and knowledge of Plaintiff.

15. The Data Broker Software on the Website is a data mining script which functions by obtaining information accessed from a visitor's computer, including computer make and model, information regarding the fonts and display settings on Plaintiff's computer and other browser information, routing information, and other technical characteristics. The Data Broker Software copies this information and transfers it to their servers, where it then makes use of the information by matching the above information with existing profiles in pre-existing data broker databases. The Data Brokers do this in order to learn the identity of the website visitor.

16. The Meta, LinkedIn, and TikTok Data Broker Software also monitors and records Website visitors' browsing by installing a small tracking data file on their device. This allows third parties like the Data Brokers to observe the Website visitor's subsequent behaviors and communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data—including whether a user is located in California.

17. The Data Broker Software is a computer contaminant. The Data Broker Software is designed to, and does, self-propagate to contaminate users' computers, computer systems, and computer networks to record and transmit data that would not otherwise be transmitted or recorded in the normal operation of the computers, computer systems, and computer networks, without the Data Broker Software. These technologies usurp the normal operation of computing devices, including Plaintiff's device because they supplant Plaintiffs' choices in how those devices and their resources are used, in effect, turning their computer into a surveillance device.

## CLASS ALLEGATIONS

18. Plaintiff brings this action individually and on behalf of all others similarly situated as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (the "Class"): "All persons in California, on whose device, during the applicable statute of limitations, Defendant installed a file track their activities even though they rejected tracking when they access Defendant's Website."

19. Excluded from the Class is Defendant, its past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns, and any entity in which any of them may have a controlling interest, as well as all judicial officers assigned to this case under 28 U.S.C. § 455(b) and their immediate families

20. Plaintiff reserves the right to modify the class definitions, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

21. Class members can be identified from Defendant's records and from the records of the third parties to whom Defendant allowed the tracking to occur.

22. Numerosity: The Class is composed of thousands of individuals, the joinder of which in one action would be impracticable. The disposition of their claims through this class action will benefit both parties and the Court.

23. Typicality: Plaintiff's claims are typical of the proposed Class members'

claims because they have accessed Defendant's Website and did not consent to tracking. Plaintiff and the proposed Class members have suffered similar harms arising from Defendant's violations of the law, as alleged herein.

24.     Existence and Predominance of Common Questions of Fact and Law: There is a well-defined community of interest in the questions of law and fact affecting proposed Class members. The questions of law and fact common to the proposed Class predominate over questions affecting only individual members. Such questions include, but are not limited to, the following:

a)     whether Defendant installed the Data Broker Software in spite of user's rejection of the tracking;

b)     whether Defendant's conduct violated the California Comprehensive Computer Data Access and Fraud Act (California Penal Code § 502(E));

c)     whether Defendant's conduct violated common law fraud;

d)     whether Plaintiff and the proposed Class members are entitled to damages, reasonable attorneys' fees, punitive damages, and costs of this suit;

e)     whether Defendant should be required to disgorge any money and data derived from its unlawful conduct; and

f)     whether Defendant should be enjoined from similar conduct in the future.

25.     Typicality: Plaintiff is asserting claims that are typical of the proposed Class members' claims because Defendant placed the tracking file on their device when they have accessed Defendant's Website and did not consent to tracking. Plaintiff and the proposed Class members have similarly suffered harm arising from Defendant's violations of the law, as alleged herein.

26.     Adequacy of Representation: Plaintiff will fairly and adequately protect and represent the interests of the members of the Class. Plaintiff's interests are not antagonistic to the interests of other Class members. Plaintiff is represented by counsel with experience in the prosecution of class action litigation generally and in the field of digital privacy litigation.

27. Superiority: A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's and the proposed Class members' claims. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action.

28. Injunctive Relief: Plaintiff also satisfies the requirements for maintaining a class under Rule 23(b)(2). Defendant acted on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

**FIRST CLAIM FOR RELIEF**

**Violation of CDAFA (Cal. Penal Code. § 502)**

**(Against Defendant Studio McGee Design LLC and DOES 1 through 10, inclusive)**

29. Plaintiff realleges and incorporates by reference all paragraphs alleged hereinabove.

30. The California Comprehensive Computer Data Access and Fraud Act ("CDAFA") Cal. Penal Code. § 502(a)-(e), makes it unlawful for parties to obtain data from a computer user outside of the scope of their authorization.

31. The stated legislative intent of CDAFA is to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). The Legislature did not limit CDAFA to "hacking" in the colloquial sense. Rather, the Legislature expressly declared that CDAFA should apply to various "forms of unauthorized access to computers, computer systems, and computer data" and serve to protect "the integrity of all types and

forms of lawfully created computers, computer systems, and computer data," and that doing so was vital to protect the privacy of individuals. Cal. Penal Code § 502(a).

32.     Under CDAFA, it is unlawful to knowingly take, copy, or make use of any data from a computer.  Cal. Penal Code § 502(c)(2).

33.     The Data Broker Software "copies" information contained on Plaintiff's computer, including browser information, computer make and model, routing information, and other technical characteristics in violation of Cal. Penal Code § 502(c)(2).

34.     The Data Broker Software also "makes use of" information contained on Plaintiff's computer by matching the above information with existing profiles in pre-existing data broker databases.  The Data Brokers do this in order to learn the identity of the website visitor.

35.     Similarly, adding "data, computer software, or computer programs" to a device without consent violates CDAFA. Cal. Penal Code § section 502(c)(4).

36.     The Data Broker Software adds data in the form a small data file to Plaintiff's computer, so that it can track Plaintiff's movements on the website, and on other websites Plaintiff visits.

37.     Penal Code Section 502(c)(6) makes third parties liable if they "[k]nowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section."  By allowing the Data Broker Software to operate on its website, despite stating that it will not do so when a user elects not to be tracked, Defendant has knowingly and without permission assisted the Data Brokers in accessing Plaintiff's computer.

38.     Similarly, Defendant's collaboration with the Data Brokers to subvert the purposes and functionality of their consent banner, the unauthorized copying and use of Plaintiff's information has also overcome a technical barrier (the consent banner itself) to obtain unauthorized access to Plaintiff's computer.

39.     Section 502(e) provides a private right of action for "compensatory damages and injunctive relief or other equitable relief."  Additionally, a court may award reasonable

COMPLAINT

attorney's fees and punitive damages on a case-by-case basis.

40.   Defendant's use of Data Broker Software with the explicit intent of accessing, copying, and making use of data from Plaintiff's computer for tracking without consent violates CDAFA.

41.   Plaintiff was harmed as a proximate result of Defendant's conduct.

42.   Plaintiff is entitled to all the damages permitted under CDAFA, including, without limitation, attorney's fees.

43.   Plaintiff is also entitled to punitive damages pursuant to Cal. Penal Code § 502(e)(4) because Defendant's actions were willful and malicious, oppressive, and/or fraudulent, and were a despicable conduct, carried out in a willful and conscious disregard of Plaintiff's rights and Plaintiff's rejection of tracking technologies. Defendant falsely and fraudulently misled Plaintiff to believe that the activities on the Website would not be tracked when Defendant configured its Website to make the consent banner with the misrepresentation, as alleged above, appear as soon as the users, such as Plaintiff, accessed its Website. However, Defendant deliberately disregarded Plaintiff's election to opt-out of tracking, not only of his activities on the Website, but his activities on other websites, with the tracking technologies employed by Defendant. Accordingly, punitive damages are warranted to deter Defendant from engaging in future misconduct.

## SECOND CLAIM FOR RELIEF

### <u>Fraud</u>

**(Against Defendant Studio McGee Design LLC and DOES 1 through 10, inclusive)**

44.   Plaintiff realleges and incorporates by reference all paragraphs alleged hereinabove.

45.   When Plaintiff access Defendant's website on May 3, 2026, Defendant fraudulently and deceptively informed Plaintiff on its consent banner that he could opt out of tracking.

46.   However, the statement on the consent banner was false. Despite Defendant's representations otherwise, Defendant caused Data Broker Software to

access Plaintiff's device, allowing the Data Brokers to obtain, copy, and make use of data to be assimilated to existing Data Broker records, and allowing a data file to be placed on Plaintiff's computer, for enhanced long-term surveillance of Plaintiff's internet behavior even though Plaintiff rejected the tracking.

47. These misrepresentations and omissions were known exclusively to, and actively concealed by Defendant, not reasonably known to Plaintiff, and material at the time they were made.

48. Defendant knew, or should have known, how the Website functioned, including the Data Broker Software it installed on the Website, through testing the Website, evaluating its performance metrics by means of their accounts with the Data Brokers, or otherwise, and knew, or should have known, that the Website's programming allowed the data files to be placed on users' (including Plaintiff's) browsers and devices and/or transmitted to the Data Brokers even after users attempted to opt out of tracking, which Defendant promised their users they could do.

49. Defendant's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to use the Website. In misleading Plaintiff not informing them, Defendant breached their duties to Plaintiff. Defendant also gained financially from, and as a result of, their breach.

50. Plaintiff relied to their detriment on Defendant's misrepresentations and fraudulent omissions.

51. Plaintiff has suffered an injury-in-fact, including the loss of money and/or property, as a result of Defendant's unfair, deceptive, and/or unlawful practices, including the unauthorized interception of his browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, which have value as demonstrated by the use and sale of consumers' browsing activity, as alleged above. Plaintiff has also suffered harm in the form of diminution of the value of his and their private and personally identifiable

- 11 -

information and communications.

52.    Defendant's actions caused damage to and loss of Plaintiff's property right to control their computer, and the dissemination and use of their personal information and communications.

53.    Defendant's representation that consumers could and opt out of tracking was untrue. Had Plaintiff known these facts, they would not have used the Website. Had Defendant disclosed that it caused data files to be stored on Website visitors' devices that cause the disclosure of their device information to data brokers, Plaintiff would have noticed it and would not have interacted with the Website.

54.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff to alter their positions to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff to, without limitation, use the Website under the mistaken belief that Defendant would not permit third parties to track users like Plaintiff when they chose to reject this type of tracking. As a result, Plaintiff provided more personal data than they would have otherwise.

55.    Plaintiff justifiably and reasonably relied on Defendant's misrepresentations and omissions, especially the consent banner appeared as soon as Plaintiff accessed Defendant's Website.

56.    As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiff has suffered damages, as alleged above, and are entitled to just compensation, including monetary damages.

57.    Plaintiff is entitled to punitive damages because Defendant's actions were willful and malicious, oppressive, and/or fraudulent, and were a despicable conduct, carried out in a willful and conscious disregard of Plaintiff's rights and Plaintiff's rejection of tracking technologies. Defendant falsely and fraudulently misled Plaintiff to believe that the activities on the Website would not be tracked when Defendant configured its Website to make the consent banner with the misrepresentation, as alleged above, appear as soon as the users, such as Plaintiff, accessed its Website. However,

Defendant deliberately disregarded Plaintiff's election to opt-out of tracking, not only of his activities on the Website, but his activities on other websites, with the tracking technologies employed by Defendant. Accordingly, punitive damages are warranted to deter Defendant from engaging in future misconduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. Compensatory damages, including any expenditure reasonably and necessarily incurred by Plaintiff in protecting their data.  Cal. Penal Code § 502(e)(1);

b. An order enjoining violation of CDAFA. Cal. Penal Code § 502(e)(1);

c. Disgorgement of money and data derived from Defendant's illicit use of the Data Broker software. Cal. Penal Code § 502(e)(1);

d. Attorney's fees pursuant to Cal. Penal Code § 502(e)(2); and

e. Punitive damages Cal. Penal Code § 502(e)(4).

f. For costs of suit;

g. For any and all other relief, at law or equity, that may be appropriate.


DATED: July 21, 2026                    TAULER SMITH LLP


                                        By:    */s/ Peter K. Chu*
                                               Peter K. Chu, Esq.
                                               Jaimee Hocker, Esq.
                                               *Attorneys for Plaintiff*
                                               *Ryan Davidson*

- 13 -
COMPLAINT

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury.

DATED: July 21, 2026                    TAULER SMITH LLP


                                        By:    */s/ Peter K. Chu*
                                               Peter K. Chu, Esq.
                                               Jaimee Hocker, Esq.
                                               *Attorneys for Plaintiff*
                                                *Ryan Davidson*

- 14 -
COMPLAINT